IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-20144
_____

WILNA BURR,

                         Plaintiff-Appellant,

v.

TRANSOHIO SAVINGS BANK,
ET AL.,

                         Defendants-Appellees.
_____

Appeal from the United States District Court
for the Southern District of Texas
_____
December 28, 1995
Before KING, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

     Wilna Burr appeals the district court's order dismissing

without prejudice her slip-and-fall negligence claim against

TransOhio Savings Bank ("TransOhio"), TransOhio Federal Savings

Bank ("TransOhio Federal"), the Resolution Trust Corporation (the

"RTC") as receiver for both banks, TransCapital Financial

Corporation ("TransCapital"), and Omni Mortgage Services

_____

     [*]    Local Rule 47.5.1 provides:  "The publication of
opinions that merely decide particular cases on the basis of
well-settled principles of law imposes needless expense on the
public and burdens the legal profession."  Pursuant to that Rule,
the court has determined that this opinion should not be
published.

Corporation ("Omni").  The district court, in an order devoid of reasons, dismissed the case without prejudice.  For the reasons assigned we affirm in part and reverse and remand in part.

## I.  BACKGROUND

On March 13, 1992, at the Comfort Inn Greensboro (the "Inn"), in Greensboro, North Carolina, Wilna Burr tripped and fell headfirst down a flight of stairs, allegedly sustaining severe and disabling injuries.  At the time of Burr's accident, TransOhio was a record titleholder to the property, having acquired the Inn via foreclosure approximately one year earlier.  Four months after Burr's accident, on July 10, 1992, TransOhio was declared insolvent, the RTC was appointed as receiver for TransOhio, and TransOhio Federal was chartered.  On July 15, 1992, a notice to the creditors of TransOhio was published in THE CLEVELAND PLAIN DEALER, specifying October 20, 1992, as the last date to file claims against TransOhio with the RTC.

On March 14, 1994, Burr filed a lawsuit in Texas state court against TransOhio and TransOhio Federal, and under an alter-ego theory, against TransCapital and Omni.  Claiming that the defendants were negligent in failing to maintain safe premises at the Inn, she sought to recover money damages for her injuries. The case was removed to the United States District Court for the Southern District of Texas on April 14, 1994.  On June 14, 1994, Burr was notified by the RTC that TransOhio had been declared insolvent, that the RTC had been appointed receiver, and that

there was a deadline for submitting a claim against TransOhio. On August 12, 1994, Burr filed her Proof of Claim against TransOhio with the RTC. On September 16, 1994, TransOhio Federal was closed and the RTC was appointed as receiver. Burr was notified of this closure on October 5, 1994, when the RTC informed Burr that the deadline for her to file a claim against TransOhio Federal was December 30, 1994.

In a motion filed on December 6, 1994, the RTC moved the district court to dismiss all claims against all defendants-- TransOhio, TransOhio Federal, TransCapital, and Omni. The RTC argued that, under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"),[2] the district court did not have subject matter jurisdiction to consider claims filed against TransOhio and TransOhio Federal until Burr had exhausted her administrative remedies. The RTC further argued that there was no viable cause of action against TransOhio Federal, TransCapital, and Omni because none of these entities owned the Inn at the time of Burr's accident--TransOhio Federal was not even chartered until three months later.

In a response filed December 21, 1994, Burr contended that, rather than dismissing her pending law suit, the district court should merely suspend it until the RTC administrative process had run its course. As to ownership of the Inn, Burr asserted that

---

[2]    Congress enacted FIRREA to remedy problems it perceived in the existing regulatory scheme in the savings and loan industry.  The RTC was established by FIRREA to act as a conservator and receiver of failed financial institutions.  See 12 U.S.C. § 1441a(b)(1)(A), et seq.

Certificates of Insurance indicated that TransCapital was at least partially involved in its ownership, operation, or control at the time of the accident. Burr requested that the court deny the RTC's motion to dismiss in order to permit the parties to conduct discovery regarding ownership of the Inn. Also on December 21, the District Court granted the motion of the RTC--in its capacity as receiver--to be substituted as defendant in place of TransOhio and TransOhio Federal. Burr filed her Proof of Claim against TransOhio Federal with the RTC, in a letter dated December 30, 1994.

In its reply to Burr's response, filed January 5, 1995, the RTC reiterated its subject matter jurisdiction argument, and additionally asserted that Burr's claim failed because it had been filed in an inappropriate venue. The district court declined to grant Burr any of the relief she requested. Instead, deciding that the RTC's motion to dismiss was "well taken," the district court dismissed Burr's lawsuit in its entirety without prejudice. This appeal followed.

## II. STANDARD OF REVIEW

Dismissals for lack of subject matter jurisdiction, improper venue, and failure to state a claim upon which relief can be granted are premised on Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6), respectively. FED. R. CIV. P. 12. The standard of review for improper venue dismissals under Rule 12(b)(3) is a narrow one. The reviewing court reverses only

4

upon a showing of abuse of discretion. <u>Beardon v. United States</u>, 320 F.2d 99, 101 (5th Cir. 1963), <u>cert. denied</u>, 376 U.S. 922 (1964). However, we review the district court's dismissals under Rules 12(b)(1) and 12(b)(6) de novo. <u>See</u> <u>Musslewhite v. State Bar of Texas</u>, 32 F.3d 942, 945 (5th Cir. 1994) (noting that de novo review is proper for 12(b)(1) dismissal), <u>cert. denied</u>, 115 S. Ct. 2248 (1995); <u>Leffall v. Dallas Indep. School Dist.</u>, 28 F.3d 521, 524 (5th Cir. 1994) (noting that de novo review is proper for 12(b)(6) dismissal). Insofar as a dismissal under Rule 12(b)(6) is concerned, we accept the allegations of the complaint as true, and we do not affirm the district court's dismissal unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief. <u>Benton v. United States</u>, 960 F.2d 19, 21 (5th Cir. 1992).

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Burr contends that the district court erred in dismissing any of her claims for lack of subject matter jurisdiction. The relevant date for determining whether a court has subject matter jurisdiction is the date on which the complaint is filed. <u>Carney v. Resolution Trust Corp.</u>, 19 F.3d 950, 954 (5th Cir. 1994). In this case, the district court determined that, under FIRREA, it could not obtain jurisdiction over Burr's claim because at the

time that Burr filed her complaint the RTC already had been named as receiver for TransOhio.

Congress created a claims determination procedure in FIRREA that is designed to allow the RTC and the Federal Deposit Insurance Corporation (the "FDIC")[3] to deal expeditiously with failed depository institutions. 12 U.S.C. § 1821(d)(3). After the RTC has been named as receiver for a failed institution, a claimant against the institution is required to present her claim to the RTC before pursuing a judicial remedy. 12 U.S.C. § 1821(d)(3) & (5). The RTC has 180 days to determine whether to allow or disallow the claim. Id. No court can acquire subject matter jurisdiction over the claim until the claimant exhausts her remedies under this accelerated administrative procedure. 12 U.S.C. § 1821(d)(13)(D); Meliezer v. Resolution Trust Co., 952 F.2d 879, 882 (5th Cir. 1992).[4] However, in the event that the RTC denies her claim or does not act on it within 180 days, the claimant has 60 days to request administrative review or to file suit in district court. 12 U.S.C. § 1821(d)(6)(A).[5] Moreover,

---

[3]    FIRREA provides that the powers attributed to the FDIC in 12 U.S.C. §§ 1821, 1822, and 1823 are applicable to the RTC. 12 U.S.C. § 1441a(b)(4).

[4]    The "Resolution Trust Company" referred to in Meliezer is the Resolution Trust Corporation established by 12 U.S.C. § 1441a(b)(1)(A), et seq.

[5]    § 1821(d)(6)(A) reads in pertinent part:

Before the end of the 60-day period . . . [the claimant may] file suit on such claim (or continue an action commenced before the appointment of the receiver), in the district or territorial court of the United States for the district within which the depository institution's principal

6

if the district court acquired subject matter jurisdiction before the RTC was appointed as receiver, it continues to have jurisdiction over the claim, albeit subordinated for a time to the administrative procedure of the RTC.[6]  "Courts will retain jurisdiction over pending lawsuits--suspending, rather than dismissing, the suits--subject to a stay of proceedings as may be appropriate."  Carney, 19 F.3d at 956 (quoting Marquis v. FDIC, 965 F.2d 1148, 1154 (1st Cir. 1992)).

In FIRREA, Congress has attempted to strike a fair balance between the expedient resolution of claims and the protection of creditor's interests.  As we have pointed out:

> Congress intended to establish a scheme for fairly adjudicating claims against failed financial institutions. It did not structure a system for the sandbagging of valid claims.  The statute is not to be used as an easy means of avoiding consideration of claims on their merits.  As demonstrated by the special provisions governing pre-receivership suits, Congress had the rights of claimants in mind when it enacted FIRREA.  RTC may not distort the provisions designed to facilitate the processing of claims  into a tool for subverting the right of claimants to present    their claims on the merits.

---

place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

12 U.S.C. § 1821(d)(6)(A).

[6]    FIRREA provides, inter alia, that the filing of a claim "with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver."  12 U.S.C. § 1821(d)(5)(F)(ii) (emphasis added). It appears clear to us, on a careful reading of § 1821(d)(6)(A) and the foregoing passage, that the district court continues to have jurisdiction over claims brought before the RTC is appointed receiver.  Carney, 19 F.3d at 955-96.

<u>Whatley v. Resolution Trust Corp.</u>, 32 F.3d 905, 909-10 (5th Cir. 1994).  If the RTC makes no attempt to timely communicate with a claimant or transmits confusing and contradictory information, the purpose of FIRREA is frustrated.[7]  To the extent that Burr has conscientiously attempted to invoke the proper procedures for asserting her claim--expending time, money, and energy in the process, her rights should be protected.  <u>Whatley</u>, 32 F.3d at 908-10.

It is uncontroverted that Burr filed her claim after the RTC had been appointed receiver for TransOhio but before the RTC was appointed receiver for TransOhio Federal.  As such, the district court was deprived of subject matter jurisdiction over the TransOhio claim.[8]  Under Rule 12(b)(1), Burr's claim against

_____

[7]    On July 15, 1992, the RTC published notice in THE CLEVELAND PLAIN DEALER that the bar date for filing claims against TransOhio would be October 20, 1992.  After Burr filed suit in Texas, the RTC, in a letter dated June 14, 1994, informed her that it had been appointed receiver and that she was required to "present [her] claims, together with proof, to the Receiver by August 9, 1993 [sic]."  A second notification letter, dated June 23, 1994, stated that:

> [a]ny claim not presented to the Receiver . . . on or
>         before September 21, 1994 will be barred. . . .
>             [But, n]otwithstanding the present letter, the
Receiver will  not and does not extend the period for filing
claims against       [TransOhio] past the Original Bar Date
[October 20, 1992]       set forth in the previously published
notice.

[8]    The district court could acquire jurisdiction over Burr's claim only after Burr had exhausted her remedies under the RTC's accelerated administrative procedure.  Apparently, while this appeal was being pursued, the RTC denied Burr's request for administrative relief, thereby exhausting her remedies under the accelerated administrative procedure.  Because she failed to exercise either of her two options--to request RTC administrative review or to file a claim in the district court--before the end

TransOhio was properly dismissed.[9]  In contrast, subject matter

jurisdiction over the claim against TransOhio Federal was vested

in the district court from the moment Burr filed suit.  Because

of the 60-day period following the disallowance, she has "no
further rights or remedies with respect to" her TransOhio claim.
12 U.S.C. § 1821(d)(6)(B).

       To preserve the TransOhio claim, it was incumbent on Burr to
take some action, in addition to filing this appeal, before the
expiration of the 60-day period following the administrative
ruling because the district court did not acquire jurisdiction
over the TransOhio claim before the receivership.  We agree with
those courts that have held that "12 U.S.C. § 1821(d)(6)(B)
requires some timely formal affirmative action" to prevent waiver
of a party's rights in a claim.  First Union Nat. Bank v. Royal
Trust Tower, Ltd., 827 F. Supp. 1564, 1568 (S.D. Fla. 1993).
Where the original action was filed after receivership, a
judicial appeal alone would be insufficient because, as we noted
in Carney, "a claimant could not 'continue' an action that should
have been dismissed."  Carney, 19 F.3d at 955 (emphasis added)
(discussing 12 U.S.C. § 1821(d)(5)(F) which provides that filing
an RTC claim "shall not prejudice any right of the claimant to
continue any action which was filed before the appointment of the
receiver").  Burr's TransOhio claim should have been, and
properly was, dismissed.

       [9]     Despite the fact that she filed her claim against
TransOhio after the RTC was appointed receiver, Burr argues that
the district court should have acquired subject matter
jurisdiction over her TransOhio claim because at the time she
filed she was unaware of the receivership.  In Meliezer, we held
that exhaustion of RTC administrative remedies is a precondition
to subject matter jurisdiction in a district court, with or
without notification.  Meliezer, 952 F.2d at 882-83 (holding that
alleged noncompliance by the RTC with the requirement of 12
U.S.C. § 1821(d)(3)(C)(ii) to mail creditors notice of the
statutory bar date for filing claims with the receiver did not
relieve claimant of obligation to exhaust administrative
remedies).  Moreover, in this regard, contrary to Burr's attempt
to distinguish Meliezer from the case at bar, we discern no
significant difference between notice of the bar date and notice
of the fact that a receivership has been declared.  As we noted
in Meliezer, the Supreme Court has indicated that "it would be
most reluctant to conclude that every failure of an agency to
observe a procedural requirement voids subsequent agency action,
especially when important public rights are at stake."  Meliezer,
952 F.2d at 883 (quoting Brock v. Pierce County, 476 U.S. 253,
260 (1986)).

the TransOhio Federal claim had been filed before the RTC receivership, the claim was merely suspended when the RTC was appointed receiver for TransOhio Federal. The district court retained continuing jurisdiction and the timely appeal of the district court's dismissal served to satisfy the requirements of § 1821(d)(6)(B). By appealing the dismissal order before the lapse of the specified 60-day period, Burr effectively "continue[d] an action commenced before the appointment of the receiver."

We conclude that the district court never acquired subject matter jurisdiction over Burr's TransOhio claim but that jurisdiction over the TransOhio Federal claim was ongoing. As to the TransCapital and Omni claims, there has been no assertion that these defendants are insured depository institutions in receivership and under the purview of FIRREA. Therefore, the district court has had continuing subject matter jurisdiction over TransCapital and Omni from the time Burr filed her claim.

**B.    Venue**

The RTC insists that under FIRREA it is not enough that Burr continued her claim against TransOhio Federal within the prescribed time limit. The statute stipulates that, after administrative review, a suit must be filed or continued either in the district in which the bank's principal place of business is located or in the district court for the District of Columbia. 12 U.S.C. § 1821(d)(6)(A). TransOhio and TransOhio Federal are

10

based in Ohio.  Consequently, the RTC argues, because Burr's suit was brought in the Southern District of Texas it must fail. Although the RTC characterizes its argument in terms of both venue and jurisdiction, we have pointed out that the requirements of this provision "are treated as venue, rather than jurisdictional, requirements."  Matter of 5300 Memorial Investors, Ltd., 973 F.2d 1160, 1163 (5th Cir. 1992); see also, Karol v. Resolution Trust Corp., 839 F. Supp. 14, 17 n.3 (E.D. Tex. 1993); Vinton v. Trustbank Sav., F.S.B., 798 F. Supp. 1055, 1065 (D. Del. 1992) (determining that § 1821(d)(6)(A) is a special venue provision, notwithstanding use of the term "jurisdiction").

We conclude that the district court should not have dismissed Burr's claim against TransOhio Federal and the RTC on the basis of improper venue.  Despite the broad discretion afforded a district court on issues of venue, we find that dismissal of Burr's action for improper venue was an abuse of discretion.  Where it is in the interest of justice, Title 28 of the United States Code stipulates that a district court shall transfer a case that has been filed in the wrong district.  28 U.S.C. 1406(a); ACF Indus., Inc. v. Guinn, 384 F.2d 15, 20 (5th Cir. 1967).  Rather than dismissing it, the district court must transfer the case to a district in which it could have been brought.  28 U.S.C. § 1406(a).

> If by reason of the uncertainties of proper venue a mistake is made, Congress, by enactment of § 1406(a), recognized that 'the interest of justice' may require that the complaint not be dismissed but rather that it be transferred

11

in order that the plaintiff not be penalized by . . . 'time-consuming and justice-defeating technicalities.'

Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467 (1962).

We instruct the district court, on remand, to transfer Burr's claim against TransOhio Federal and the RTC to a district that is proper under 12 U.S.C. §§ 1441a(*l*)(3)(A) and 1821(d)(6)(A).[10]  Otherwise Burr would be time-barred from initiating another action against both TransOhio and TransOhio Federal.  Given that the "functional purpose of 28 U.S.C. § 1406(a) is to eliminate impediments to the timely disposition of cases and controversies on their merits,"  such a result would not serve the interests of justice.  Minnette v. Time Warner, 997 F.2d 1023, 1027 (2nd Cir. 1993).

## C.   Failure to State a Claim

The RTC argues that, as to TransOhio Federal, TransCapital, and Omni, Burr "states no claim or cause of action upon which relief can be granted."  Framed in this way, their argument raises a 12(b)(6) issue.  FED. R. CIV. P. 12(b)(6).  The RTC supported its motion to dismiss with copies of deeds to the Comfort Inn Greensboro recorded in North Carolina.  In cases where the district court has considered material extraneous to

---

[10]    Under §§ 1441a(*l*)(3)(A) and 1821(d)(6)(A), venue for a claim against TransOhio Federal and the RTC would be proper only in Washington D.C. or in the Northern District of Ohio--the district in which TransOhio Federal's principal place of business was located.  12 U.S.C. §§ 1441a(*l*)(3)(A) and 1821(d)(6)(A).  The parties have treated all defendants as a group insofar as venue is concerned, and we do not decide any venue issue as to TransCapital and Omni.

12

the pleadings, "an appellate court may review the lower court's decision as one for summary judgment, even if the court mislabeled it as a 12(b)(6) dismissal." Jackson v. Procunier, 789 F.2d 307, 310 (5th Cir. 1986). The district court did not expressly state its grounds for dismissal. In spite of the fact that the district court dismissed the action "without prejudice," thereby suggesting that the dismissal was a subject matter jurisdiction dismissal as to all defendants, both the RTC and Burr address the district court dismissal, in part, as if it were a 12(b)(6) summary judgment. However, summary judgment is a final adjudication on the merits. Hulsey v. Texas, 929 F.2d 168, 170 (5th Cir. 1991); Stanley v. Central Intelligence Agency, 639 F.2d 1146, 1156 (5th Cir. 1981), rev'd on other grounds, 483 U.S. 669 (1987). Dismissal with prejudice for failure to state a claim is also a decision on the merits. Persyn v. United States, 935 F.2d 69, 74 (5th Cir. 1991); Mahone v. Addicks Util. Dist. 836 F.2d 921, 940 (5th Cir. 1988). Because the district court dismissed all of Burr's claims without prejudice and because there was no motion for summary judgment filed, we find that the district court did not treat the RTC's motion for 12(b)(6) dismissal as a motion for summary judgment.

A motion to dismiss for failure to state a claim should be granted "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Matter of United States Abatement Corp., 39 F.3d 556, 559 (5th Cir. 1994). Such a dismissal is disfavored in the

13

law and rarely granted.  Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982), cert. denied, 459 U.S. 1105 (1983).  A complaint fails to state a claim on which relief may be granted where the pleadings are inadequately framed or where the law does not afford relief on the basis of the facts alleged.  Walker v South Cent. Bell Tel. Co., 904 F.2d 275, 277 (5th Cir. 1990).  The Federal Rules of Civil Procedure require that a pleading setting forth a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a).  There are two grounds on which pleadings may be found to be inadequately framed:  failing to provide notice of the circumstances giving rise to the claim; or failing to "set forth sufficient information to outline the elements of [the] claim or to permit inferences to be drawn that these elements exist."  Walker, 904 F.2d at 277 (quoting 5 WRIGHT AND MILLER, FEDERAL PRACTICE PROCEDURE § 1216 (1969)).  The RTC invokes the second of these two grounds by arguing that Burr failed to state a claim against TransOhio Federal, TransCapital, and Omni because none of these defendants owned the Comfort Inn Greensboro at the time of Burr's accident.

An innkeeper has a duty to protect his guests against unreasonable risk of physical harm.  Banks v. Hyatt Corp., 722 F.2d 214, 221 (5th Cir. 1984) (citing the general rule as set out in the RESTATEMENT (SECOND) OF TORTS § 314A (1965)).  Burr alleged that, in the course of owning, operating, or controlling the

14

Comfort Inn Greensboro, the defendants--TransOhio, TransOhio Federal, TransCapital, and Omni--negligently failed to provide her with safe premises. Burr linked TransOhio to TransCapital and Omni via an alter-ego theory of liability, asserting that:

> [T]hese Defendants are sham corporate structures who failed to follow corporate formalities and, as such, the act of one is the act of the other and their corporate identity should be disregarded. Further, Plaintiff would show that the management and operation of these Defendants are assimilated to the extent that the subsidiaries are simply a name or conduit through which the parent conducts its business so that the corporate fiction should be disregarded.

We find that the statement of Burr's claim satisfied the requirements of Rule 8(a). The pleading did not need to outline all the elements of her claim. Walker, 904 F.2d at 277. As long as it is possible to draw an inference from Burr's complaint that the necessary elements existed, her claim will not fail as inadequate. Id. It does not appear beyond doubt that Burr can prove no set of facts in support of her claim that would entitle her to relief. Therefore, we conclude that Burr's complaint should not have been dismissed for failure to state a claim upon which relief can be granted.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the dismissal of Burr's claim against TransOhio for lack of subject matter jurisdiction, but we REVERSE the district court's dismissal of the claims against TransOhio Federal, the RTC, TransCapital, and Omni for

15

lack of subject matter jurisdiction, improper venue, and the failure to state a claim upon which relief can be granted, and we REMAND with instructions that the district court transfer these claims to a district where venue is proper.  Costs shall be borne by the defendants.